1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JANE WINGATE / ALI HOCHBERG,          No.  2:19-cv-02494 TLN CKD (SS)

12                  Plaintiff,

13        v.                               FINDINGS AND RECOMMENDATIONS

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                    Defendant.
16

17

18        Plaintiff[1] seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for disability benefits under Titles II and XVI of the

20   Social Security Act.  For the reasons discussed below, the court will recommend that plaintiff's

21   motion for summary judgment be granted and the Commissioner's cross-motion for summary

22   judgment be denied.

23   BACKGROUND

24        Plaintiff, born in 1957, applied on February 19, 2016 for Disability Insurance Benefits and

25   Supplemental Security Income benefits, alleging disability beginning November 1, 2014.

26

27   _____
     [1] This action was commenced on December 13, 2019.  Plaintiff Wingate died on June 17, 2020,
     and her daughter Ali Hochberg was substituted in as her successor party-in-interest.  (ECF Nos.
28   17 & 18.)  All mentions of "plaintiff" herein refer to Ms. Wingate, the disability claimant.

Administrative Transcript ("AT") 32, 217-228, 250.  Plaintiff alleged she was unable to work due to mental and physical impairments including depression, anxiety, insomnia, arthritis, panic attacks, diverticulitis, allergies, sacral back issues with weakness on the right side, eczema, pancreatic disease, attention and memory deficits, and social issues.  AT 118-119.  Plaintiff's last date insured for Title II benefits was December 31, 2019.  AT 250.  In a decision dated October 18, 2018, the ALJ determined that plaintiff was not disabled.[2]  AT 32-42.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

---

[2]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2.  The claimant has not engaged in substantial gainful activity since November 1, 2014, the alleged onset date.

3.  The claimant has the following severe impairments: gastroesophageal reflux disease/pancreatitis, asthma, alcohol abuse, degenerative disc disease, osteoarthritis, depression, and anxiety.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except she can frequently stoop, kneel, crouch, or crawl, must avoid concentrated exposure to fumes and odors, is limited to simple, repetitive tasks, and can have no interactions with the public and occasional interactions with coworkers.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on xx/xx/1957 and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching retirement age.

8.  The claimant has at least a high-school education and is able to communicate in English.

9.  Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2014 through the date of this decision.

AT 34-42.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ erred in evaluating the medical opinions; (2) the ALJ erred in discounting plaintiff's testimony; (3) the ALJ erred in discounting third-party written testimony; and (4) based on a flawed RFC, the ALJ posed an inadequate hypothetical question to the vocational expert.

////

3

1    LEGAL STANDARDS

2         The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

14   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

16   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

17   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

18   administrative findings, or if there is conflicting evidence supporting a finding of either disability

19   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

20   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22   ANALYSIS

23        A.  Medical Opinions

24        Plaintiff asserts that the ALJ failed to provide proper reasons for rejecting the opinions of

25   treating physician Dr. Rezai and mental consultative examiner Dr. Cormier.

26        The weight given to medical opinions depends in part on whether they are proffered by

27   treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

28   1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

4

greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala , 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

As set forth above, plaintiff's alleged period of disability was between November 2014 and October 2018.  Plaintiff began seeing Dr. Mohammed Rezai at Shasta Community Health Center in February 2016.  AT 370.  At that time, he provided a letter "to whom it may concern" stating that plaintiff's "current state of health has left her incapacitated to care for herself including holding a job and caring for her day-to-day needs."  AT 370.

In April 2016, plaintiff sought treatment for substance abuse, reporting that she drank a bottle of wine a day.  AT 489.  In May 2016, plaintiff reported that she had been sober for two weeks but was experiencing body pain, lethargy, balance issues, and mental symptoms since starting Librium the previous week.  AT 501.  The treating doctor attributed her symptoms of lethargy and gait disturbances to overuse of Librium and advised her to decrease her dose.  AT 503.  Later that month, Dr. Rezai noted that plaintiff was making progress on her sobriety and

1 | would taper down her Librium dose.  AT 516.

2 |       Between February 2016 and May 2018, Dr. Rezai saw plaintiff a total of 13 times,

3 | addressing both physical and mental problems.  In August 2016, Dr. Rezai again opined (in

4 | another letter to "whom it may concern"): "Her current state of health has left her incapacitated to

5 | care for herself including holding a job and caring for her day-to-day needs."  AT 486.

6 |       The ALJ addressed Dr. Rezai's February 2016 and August 2016 letters as follows:

> As for the opinion evidence, the undersigned gives little weight to the statements of Mohammed Rezai, D.O., that the claimant is unable to hold a job.[3]  Dr. Rezai's original statement, which was provided during a period of alcohol abuse, gives no reasoning beyond the claimant's 'current state of health' to support Dr. Rezai's conclusion that she is unable to work, and thus lacks the specificity that may give it weight in determining the claimant's residual functional capacity.  His subsequent statement is identical, despite changes in the claimant's sobriety and, presumably, her functioning.  Furthermore, this statement goes to a matter reserved to the Commissioner.

AT 39.

      In formulating the physical RFC, the ALJ partially credited the opinion of State agency consultative examiner Dr. Parimal Shaw, who examined plaintiff in May 2016 and reviewed some of her recent medical records.  AT 40, citing AT 452-459.  Dr. Shaw opined that plaintiff was capable of medium work with postural limitations.  AT 458.  However, he noted that "the claimant will need frequent rest as needed at her discretion."  AT 458.  The ALJ discounted this part of the opinion, writing: "Dr. Shaw does not provide any explanation for this rest requirement, which is not consistent with the largely negative objective findings."  AT 40.

      The ALJ also credited the opinion of two non-examining physicians, Dr. Seth Spoor and Dr. R. Lockmiller, both of whom reviewed plaintiff's medical records in 2016 and concluded that she was physically able to perform medium work.  AT 40, citing AT 92-93, 130-131.  Both opined that she could lift 50 pounds occasionally and 25 pounds frequently; sit and stand/walk 6 hours each out of an 8-hour day; and had no postural, manipulative, visual, or communicative limitations, though Dr. Lockmiller found that she had some environmental limitations.  AT 92-93,

---

[3] Citing AT 370, 486.

1  130-31.

2     Plaintiff argues that the ALJ erred in discounting Dr. Rezai's two opinions stating she was

3  incapable of caring for her day-to-day needs or holding down a job.

4     Though Dr. Rezai's first letter was written during a period in which plaintiff was abusing

5  alcohol, at the time of the August 2016 letter, Dr. Rezai had been plaintiff's treating physician for

6  six months.  In an examination record written the same day, he noted that plaintiff had been sober

7  for 109 days.  AT 483.  Dr. Rezai noted that plaintiff continued to experience sleeplessness and

8  anxiety, in part due to chronic pain.  AT 483.  He further noted that plaintiff had a history of

9  chronic pain.  AT 483.

10
11
12
> The pain is in her (R) hip, BIL shoulder, and BIL knee.  She states that the pain can be incapacitating.  She has trouble walking and sitting.  Physical therapy does alleviate some of the pain.  But afterward she is in worsening pain, and does not think she is making progress with the PT.

13  AT 483.  Dr. Rezai wrote that plaintiff's physical findings were normal, and she was able to stand

14  from a sitting position.  AT 484.  Though Dr. Rezai's August 2016 opinion is somewhat

15  supported by his contemporaneous treatment notes, his broad statement that plaintiff was

16  "incapacitated" and "incapable of caring for herself" is not supported by objective findings in the

17  record.  Thus, the undersigned finds the ALJ did not err in discounting Dr. Rezai's brief and

18  conclusory 2016 opinions.

19    More questionable is the ALJ's rejection of the part of the examining doctor's opinion stating

20  that plaintiff would need "frequent request [from medium work] at her discretion."  AT 548.  If

21  plaintiff's claims of chronic pain, mobility issues, sleeplessness, and anxiety during this period

22  (as reflected in Dr. Rezai's treatment notes) are credited at all, her condition would seem to

23  require frequent rest breaks from medium-level work, which could include lifting 25 pounds

24  frequently and standing/walking for six hours per shift.

25    The biggest problem with the physical opinion evidence, however, is that it covers too short a

26  time.  Though the alleged period of disability is from November 2014 to October 2018, no

27  medical opinions take into account plaintiff's physical problems in 2017, a year in which she was

28  prescribed an ankle brace and cortisone shots for foot pain, diagnosed with a possible fracture

1    after a bone scan, and repeatedly reported foot pain and trouble walking.

2           By 2017, plaintiff had a significant record of ambulation problems.  In June 2016, Dr.

3    Rezai referred her to physical therapy to work on balance and lower extremity strength (AT 539),

4    and she had regular sessions over the next six months.  In an August 29, 2016 progress note

5    (which Dr. Shaw and Dr. Lockmiller did not have the opportunity to review), the physical

6    therapist noted that, after 18 sessions, "she demonstrates improved ambulatory tolerances,

7    improved balance, and increased strength.  Her improvement in functional index scoring indicates

8    an improvement from severe to moderate limitations which is consistent with the current

9    objective findings and subjective report."  AT 923 (emphasis added).  Her "lower extremity

10   functional scale" was marked as 34/80.  AT 923.  Plaintiff was discharged from physical therapy

11   on January 26, 2017, months after both consultative doctors and the examining doctor reviewed

12   her records.  Following up on the 2016 diagnoses of abnormal gait and mobility, pain in both

13   lower legs, and difficulty walking, the discharge record noted that, after 31 sessions, she had

14   reached a "functional plateau" of "moderate to mild-moderate limitations depending on levels of

15   activity[.]"  AT 985 (emphasis added).

16          In May 2017 treatment notes, Dr. Rezai noted that plaintiff's right ankle pain had

17   worsened over the last six months, with plaintiff stating that "the [right] foot has become

18   unbearable after ambulation.  It encompasses the entire dorsi foot radiating up to the knee and

19   states it affects her gait, giving her back pain."  AT 895.

20          In June 2017, podiatrist Mitchell Hawley DPM evaluated plaintiff's right foot pain, noting

21   plaintiff's statements that it had become "progressively worse over the last year, especially with

22   walking," and that her "right foot feels unstable."  AT 913.  In July 2017, Dr. Hawley noted her

23   "constant . . . aching sensation in the foot"; x-rays produced no "significant findings" but showed

24   possible degenerative joint disease or mild spurring.  AT 1179.  Dr. Hawley prescribed an ankle

25   brace for increased support of the ankle and dorsal foot.  AT 1179.  In August 2017, Dr. Hawley

26   noted that plaintiff continued to have pain in her right foot, though the ankle brace was "mildly

27   beneficial."  He administered a cortisone shot in her foot for pain relief and advised her to

28   "[a]void any activities that create discomfort."  AT 1200.  In November 2017, with plaintiff still

1  reporting foot pain, Dr. Hawley ordered a bone scan, which was performed November 27, 2017

2  and <u>not</u> reviewed by Dr. Shaw, Dr. Spoor, or Dr. Lockmiller.  The bone scan indicated that

3
4
5
6

> [t]he uptake in the right foot is most suggestive of a fracture, stress or otherwise . . . There are probable osteoarthritic changes about many of the joints of the extremities, particularly including the medial compartment of the left knee, and there may be mild periosteal stress reactions, particularly in the right tibia.  The update in the lumbar spine is most suggestive of osteoarthritic changes.

7  AT 1320.

8        Plaintiff had other documented physical problems in 2017, most notably with her hearing,

9  which were not reviewed by the physicians who examined her file in 2016.  In March 2017, Dr.

10  Rezai noted that plaintiff "presents with buzzing and high pitch tinnitus in both ears.  The

11  symptoms have been severe and occur constantly."  AT 807.  Plaintiff's hearing loss, Dr. Rezai

12  noted, "has been present for several years and is now worsening"; it was "likely age related."  AT

13  809.  Two months later, Dr. Rezai referred her to an audiologist, noting: "Bilateral hearing loss w/

14  tinnitus worsening over the last 6 months that has been present tar years. Right worse than left."

15  AT 893.  A July 2017 hearing assessment noted "tinnitus and absent reflexes" among its findings.

16  AT 1182.  None of the physicians who gave opinions on plaintiff's physical functional capacity

17  reviewed these records, and the RFC did not any include any hearing limitations.

18        Evidence raising an issue requiring the ALJ to investigate further depends on the case.

19  Generally, there must be some objective evidence suggesting a condition that could have a

20  material impact on the disability decision.  See <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir.

21  1996); <u>Wainwright v. Secretary of Health and Human Services</u>, 939 F.2d 680, 682 (9th Cir.

22  1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"

23  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting <u>Smolen</u>, 80 F.3d at 1288.)

24        Here, the undersigned finds that the ALJ failed to fully develop the record by having at

25  least one doctor review plaintiff's 2017 medical records when assessing physical functional

26  capacity.  These records suggested conditions that could have a material impact on the disability

27  decision.  Moreover, the ALJ's error was not harmless, as the RFC for medium work involves

28

1  strenuous activity for someone with foot and leg pain and moderate impairment in walking and

2  balancing.  See SSR 83-10.  The ALJ acknowledged at the hearing that plaintiff would "grid[]

3  out" if the RFC was for light work. AT 80.  Plaintiff is entitled to summary judgment on this

4  claim.[4]

5    B. Credibility

6       Plaintiff next argues that the ALJ improperly discredited her testimony.

7       In his decision, the ALJ summarized plaintiff's testimony, writing in part:

8           The claimant testified that she is unable to work due to physical and
             mental limitations, including pain in her knees, foot, and back, as
9           well as panic attacks and anxiety.  Physically, she reported pain in
             her knee and feet related to arthritis, exacerbated by a fall from her
10          bicycle.  She testified that she wears a brace for her knee and feet,
             and that she has treated her foot pain with cortisone shots.  She
11          reported that her knee and foot sometimes give way when she is not
             wearing a brace, causing falls and balance issues. . . . She testified
12          that she is unable to carry much weight without hurting her back, but
             that she is able to lift a gallon of milk.
13
             She testified that she experiences panic attacks three times per week
14          and anxiety attacks twice per week. . . . She testified that her mood
             is depressed and anxious even when she is not drinking, and that she
15          has recently started on Abilify for her mental impairments. . . . She
             testified that she went through a period during which depression kept
16          her in bed for multiple days at a time on a weekly basis.

17  AT 36-37, citing

18       The ALJ found that plaintiff's statements about the severity of her symptoms were

19  "inconsistent because the record does not reflect panic attacks of the frequency or intensity

20  reported by the claimant, nor is it consistent with the claimant's other physical and mental

21  allegations."  AT 37.  The decision then summarized her medical history during the relevant

22  period.  AT 37-38.

23       "In sum," the ALJ wrote, "the claimant has a history of reported musculosketal problems,

24  but there is little objective evidence supporting these symptoms.  Her reported activities of daily

25  living, including yoga, walking, and riding a bicycle, indicate a greater degree of functional

26  capacity than she has alleged, and her treatment records reflect acute episodes of injury or

27  _____

28  [4] The undersigned does not reach the argument that the ALJ erroneously discounted the opinion
    of plaintiff's examining psychologist, Dr. Cormier.

1  exacerbation, rather than constant symptoms."  AT 38.

2       Plaintiff asserts that this description of her daily activities leaves out the context.  At the

3  hearing, she testified that she took "short" walks of 15-20 minutes; tried biking but fell off her

4  bike due to balance problems, injuring her knee as reflected in 2018 medical records; and tried

5  yoga but didn't like it.  AT 64, 66, 72.  Thus, plaintiff argues, these were not sustained activities

6  that demonstrated an ability to do medium work.  Moreover, as set forth above, some of the

7  medical records during the relevant period tend to support plaintiff's claims of disabling physical

8  and mental symptoms.

9       In evaluating whether subjective complaints are credible, the ALJ should first consider

10  objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

11  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

12  then may consider the nature of the symptoms alleged, including aggravating factors, medication,

13  treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

14  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

15  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

16  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

17  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

18  01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

19  effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

20  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

21  treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

22  in determining whether the alleged associated pain is not a significant nonexertional impairment.

23  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

24  on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

25  1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

26  (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

27  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

28  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

1    In Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015), the Ninth Circuit held that

2    an ALJ's failure "to identify the testimony she found not credible" and "link that testimony to

3    particular parts of the record supporting her non-credibility determination" was legal error.  See

4    also Treichler v. Comm'r of Soc. Sec., 775 F.3d 1090, 1102-1103 (9th Cir. 2014) (ALJ's failure

5    to "specifically identify the testimony" he found not credible was error; boilerplate statement that

6    symptoms were not credible to the extent they were inconsistent with the RFC was insufficient);

7    Morsea v. Berryhill, 725 Fed. Appx. 463, 465 (9th Cir. Feb. 12, 2018) (unpublished) (ALJ "failed

8    to identify the testimony from the claimant found not credible and explain what evidence

9    undermined his testimony.  Although the ALJ summarized claimant's testimony and also

10   summarized the medical evidence in the record, the findings were general in nature, which is

11   insufficient for an adverse credibility determination."), citing Treichler, 775 F.3d at 1102.

12          Here, the ALJ concluded that plaintiff's subjective statements about her symptoms were

13   "inconsistent because the record does not reflect panic attacks of the frequency or intensity

14   reported by the claimant, nor is it consistent with the claimant's other physical and mental

15   allegations."  However, "[t]he ALJ must identify the testimony that was not credible, and specify

16   what evidence undermines the claimant's complaints."  Id., citing Reddick v. Chater, 157 F.3d

17   715, 722 (9th Cir. 1998) (internal quotations omitted).  The ALJ's general references to the

18   medical record and daily activities, some of which could be read to support plaintiff's testimony

19   about her mental and physical symptoms, are not legally sufficient reasons to discount her

20   credibility.  The undersigned finds that plaintiff is entitled to summary judgment on this claim.[5]

21   CONCLUSION

22          With error established, the court has the discretion to remand or reverse and award

23   benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

24   under the "credit-as-true" rule for an award of benefits where:

25                  (1) the record has been fully developed and further administrative
                    proceedings would serve no useful purpose; (2) the ALJ has failed to
26                  provide legally sufficient reasons for rejecting evidence, whether
                    claimant testimony or medical opinion; and (3) if the improperly

27

28   [5] These findings and recommendations do not reach the remaining claims.

1                discredited evidence were credited as true, the ALJ would be

2                required to find the claimant disabled on remand.

3 Garrison, 759 F.3d at 1020.  Even where all the conditions for the "credit-as-true" rule are met,

4 the court retains "flexibility to remand for further proceedings when the record as a whole creates

5 serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

6 Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015)

7 ("Unless the district court concludes that further administrative proceedings would serve no

8 useful purpose, it may not remand with a direction to provide benefits."); Treichler v.

9 Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

10 makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand

11 the case to the agency.").

12         Here, plaintiff is deceased and further administrative proceedings would serve no useful

13 purpose.  The record includes multiple medical opinions, medical evidence, plaintiff's testimony,

14 the testimony of a lay witness, and the testimony of a vocational expert.  The record has

15 established that, if plaintiff's testimony about her symptoms was credited as true, the ALJ would

16 be required to find her disabled on remand.  Moreover, the record as a whole does not create

17 serious doubt as to whether plaintiff is, in fact, disabled within the meaning of the Social Security

18 Act.

19         Accordingly, IT IS HEREBY RECOMMENDED that:

20         1.  Plaintiff's motion for summary judgment (ECF No. 14) be granted;

21         2.  Defendant's cross-motion for summary judgment (ECF No. 15) be denied;

22         3.  The Commissioner's decision be reversed;

23         4.  This matter be remanded for the immediate award of benefits to plaintiff Hochberg;

24 and

25         5.  The Clerk of the Court be directed to enter judgment for plaintiff and close this case.

26         These findings and recommendations are submitted to the United States District Judge

27 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

28 after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 2, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/wingate2494.ssi.ckd_fr

14